IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| THE CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY, | § § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 1:17-CV-702 |
| v. | § § | |
| LML GROUP, L.L.C., | § § | |
| Defendant. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiff The Cincinnati Specialty Underwriters Insurance Company ("CSUIC") petitions this Court, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, for construction of commercial general liability policies and a declaration that CSUIC has no duty to defend and indemnify Defendant LML Group, LLC ("LML") in the underlying lawsuit. In support of this Original Complaint, Plaintiff respectfully shows:

# I.
# PARTIES

1.1   Plaintiff CSUIC is an Ohio corporation with its principal place of business in Cincinnati, Ohio.

1.2   Defendant LML is a Texas limited liability company with its principal place of business at 2802 Flintrock Trace, Suite 282, Austin, Texas 78738.

# II.
# JURISDICTION AND VENUE

2.1   Because the parties to this lawsuit are citizens of different states and the amount in controversy exceeds $75,000, this Court has jurisdiction under 28 U.S.C. §1332.

**PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT—PAGE 1**

2756396v1
01238.255

2.2     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(1) because the Defendant resides within this judicial district.

2.3     An actual controversy exists between the parties within the meaning of 28 U.S.C. §2201, and this Court is, therefore, vested with the power in the present case to declare and adjudicate the rights and other legal relationships of the parties in this action with reference to the issues raised by this Complaint.

## III.
## UNDERLYING LAWSUIT

3.1     This declaratory judgment action arises from a lawsuit filed in the 197th Judicial District Court of Cameron County, Texas, styled as Cause No. 2016-DCL-03447, *SCI Acquisition Co., Inc. d/b/a Southern Careers Institute Inc. v. The Burt Group, Inc., f/k/a Burt-Watts Industries, Inc., SCI TBB Development, L.L.C. and LML Group, L.L.C.* ("Underlying Lawsuit"). A copy of Plaintiff's Third Amended Original Petition (referred to throughout as the "the Petition") filed in the Underlying Lawsuit is attached as Exhibit A.

3.2     The Petition alleges that LML was hired by SCI Acquisition Co., Inc. d/b/a Southern Careers Institute, Inc. ("SCI") as the project manager and representative for the relocation of SCI's Brownsville and Harlingen campuses (individually the "Brownsville Project" and "Harlingen Project" and collectively, "Both Projects"). Ex. A at ¶¶ 4.5, 4.8.

3.3     The Petition also names The Burt Group, Inc. f/k/a Burt-Watts Industries, Inc. ("Burt-Watts/TBG") and SCI TBB Development, LLC ("TBB Development) (collectively, "Burt") as defendants. Burt-Watts/TBG was hired as the general contractor for Both Projects. TBB Development owns the real property where the Harlingen Project is situated. Ex. A at ¶ 3.1.

3.4     SCI is a career training school operating campuses throughout the Rio Grande Valley.  According to the Petition, by mid-April 2014, design plans were circulated and by mid-May, LML circulated a "general timeline" for Both Projects to be fully completed and ready for SCI's occupancy by November 17, 2014.  The Petition alleges that throughout the negotiation process, SCI stressed the importance of having Both Projects completed by November 17, 2014 because the leases for the Brownsville and Harlingen campuses expired at the end of November, and thus relocation by the deadline was necessary. SCI was also seeking the Commission of Occupational Education's ("COE") approval to expand two curriculum offerings to other campuses, and the COE was scheduled to visit both campuses in mid-December 2014.  Ex. A at ¶¶ 4.1, 4.6, 4.7.

3.5     The Petition alleges LML promised to provide SCI active participation on both relocation projects, but seldom traveled to Cameron County to provide oversight on either project.  Ex. A at ¶ 4.5.

3.6     The Petition alleges Samantha Call Center, LLC leased the real property for the Brownsville Campus to SCI on May 30, 2014.  SCI took possession on the same day. According to the Petition, the Brownsville building and parking lot have not been functional and have not met industry standards for commercial construction.  The Petition alleges there have been problems with the electrical wiring, the HVAC system, the millwork, the floor, the plumbing and the parking lot, due to Burt-Watt/TBG's inadequate workmanship and inadequate oversight of subcontractors, failure to follow applicable building codes, refusal to properly repair problems, failure to timely pay subcontractors after receiving payment from SCI, and failure to warranty its work.  Ex. A at ¶ 4.12. Additionally, the Petition alleges that during construction of the Brownsville Project, Burt-Watts/TBS pillaged the unused side of the building without SCI's

knowledge, stripping and displacing cabling, taking the copper wiring for resale, and removing a significant portion of the ceiling tiles. Ex. A at ¶ 4.11. Further, the Petition alleges LML breached its fiduciary duty to SCI in LML's oversight of the Brownsville Project and stated LML should be required to forfeit its project management fee as compensation to SCI. Ex. A at ¶ 4.14.

      3.7    With regards to the Harlingen Project, the Petition asserts LML accepted a significant project development fee from Burt for the Harlingen Project and did not disclose this fact to SCI. Ex. A at ¶ 4.8, 4.16. In addition, the Petition alleges that despite promising SCI it could occupy the Harlingen campus no later than November 17, 2014, Burt did not commence work until shortly before the deadline. Ex. A at ¶ 4.18. Because of project mismanagement, poor communication, permitting and construction issues with the City of Harlingen, and sloppy construction, SCI alleges it was unable to occupy and commence classes until January 6, 2015. Ex. A at ¶ 4.18. Defendants also failed to provide a full certificate of occupancy for the Harlingen Project until February 12, 2015. Ex. A at ¶ 4.18. The Petition further alleges that since the January 2015 move-in, SCI has experienced multiple problems with the HVAC and Welding labs, the construction of the addition, the HVAC system, the electrical system, the plumbing, parking lot, and has experienced roof leaks, among other problems. Ex. A at ¶ 4.19. The Petition alleges Burt failed to fix any of the problems and failed to honor any warranties during the warranty period. Ex. A at ¶ 4.19.

      3.8    The Petition alleges Burt did not disclose, and LML never reported, the presence of support columns throughout Harlingen's original building, which impacted the ability to use that side of the building for classroom instruction. Ex. A at ¶ 4.20. The HVAC and Welding labs were placed in the building with the obstructing columns in lieu of the regular classrooms to

try and remedy the obstruction problem. The swap, however, resulted in lab space that could only accommodate 130 students as opposed to the intended 150. Ex. A at ¶ ¶ 4.22, 4.23. Additionally, SCI was forced to delay the start of the HVAC program until February 23, 2015 and the Welding Program until April 13, 2015, due to the improper installation of the ventilation, exhaust and electrical systems. Ex. A at ¶ 4.24. The Petition alleges the lack of ability to accommodate the intended 150 students, and the delay in the start of both programs, resulted in damages to SCI. Additionally, the Petition alleges Burt failed to provide adequate parking spaces to accommodate 350 students, forcing SCI to lease additional property to provide additional parking for its students and staff. Ex. A at ¶ 4.26.

3.9   As to CSUIC's insured LML, the Petition alleges LML breached its fiduciary duty to SCI in its oversight of the projects, by failing to ensure the projects were completed on time and on budget, and for accepting a project development fee for the Harlingen Project from Burt. The Petition also alleges LML breached its fiduciary duty to SCI by failing to provide the highest level of quality project management services through outstanding service, professional integrity and the knowledge and skills of its top-rate professionals" and by failing to be the "single source of responsibility and accountability for the projects' performance" as promised.

3.10   SCI asserts causes of action for negligence, gross negligence, negligent hiring and/or supervision, negligent misrepresentation, breach of implied warranty of good and workmanlike services, breach of implied warranty of suitability, breach of contract under the Harlingen Lease, promissory estoppel, fraud, and tortious interference on the Harlingen Project against Burt and Defendants.

3.11    Through the Underlying Lawsuit, SCI seeks actual and consequential damages, exemplary damages, forfeiture of LML's project development fees, attorney's fees, prejudgment and post-judgment interest, and court costs.

## IV.
## THE POLICIES

4.1    CSUIC issued consecutive Commercial General Liability Policies number 0047518 to LML, effective from May 23, 2013 to May 23, 2014 (the "2013-14 Policy); May 23, 2014 to May 23, 2015 (the "2014-15 policy"); May 23, 2015 to May 23, 2016 (the "2015-16 Policy"); and May 23, 2016 to May 23, 2017 (the "2016-17 Policy) (referred to collectively as the "Policies"). *See* Ex. B.  The Policies contain per occurrence limits of $1,000,000, with a general aggregate limit of $2,000,000, and a products-operations aggregate limit of $2,000,000.  Each of the Policies is also subject to a $1,000 deductible.  *See* Ex. B.  True and correct copies of the policies are attached as Exhibit B and incorporated herein by reference as if set forth in full.

4.2    The Policies preclude coverage, via endorsement, for construction management errors and omissions and professional services.  Per this endorsement, coverage is excluded for any "property damage" arising from construction management services on a project in which the insured serves as construction manager.  The exclusion provides:

* * *

2.    **Exclusions**[1]

This insurance does not apply to:

"Bodily injury", "property damage" or "personal and advertising injury" arising out of:

---

[1] The Primary Policies' Insuring Agreement for Bodily Injury and Property Damage Liability, and the cited Definitions and Exclusions are substantively identical.  For the sake of brevity, CSUIC cites only the 2013-2014 Policy.

**PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT—PAGE 6**

2756396v1
01238.255

    **a.**    Construction management services on a project on which you serve as construction manager. However, this exclusion does not apply to "bodily injury" or "property damage" due to construction or demolition work done by you, your "employees" or your subcontractors.

    **b.**    The rendering of or failure to render any contractor professional services by you or on your behalf on a project on which you do not serve as construction manager, but only with respect to either or both of the following operations:

        **(1)**    Providing engineering, architectural or surveying services to others; and

        **(2)**    Providing, or hiring independent professionals to provide engineering, architectural or surveying services in connection with construction work you perform.

The following definitions are added and apply with respect to this endorsement:

**1.**    Construction management services include

    **a.**    Preparing, approving or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications by any architect, engineer or surveyor; and

    **b.**    Inspection, supervision, consulting, quality control, architectural or engineering activities done by or for you.

**2.**    Contractor professional services include:

    **a.**    Preparing, approving, or failing to prepare or approve, maps, shops drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

    **b.**    Supervisory, consulting or inspection activities performed as part of any related architectural or engineering activities.

However, contractor professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with construction work you perform.

\* \* \*

Ex. B. at CSGA 402 07 10.

    4.3    The insuring agreement in the liability portion of the policies provides coverage for "personal injury" or "property damage" caused by an "occurrence" during the policy period. The policy periods for the Policies are: May 23, 2013 to May 1, 2014 (the "2013-14 Policy); May 23, 2014 to May 23, 2015 (the "2014-15 policy"); May 23, 2015 to May 23, 2016 (the

"2015-16 Policy"); and May 23, 2016 to May 23, 2017 (the "2016-17 Policy). The relevant provisions provide:

\* \* \*

**SECTION I - COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages because of "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      **(1)** The amount we will pay for damages is limited as described in SECTION **III** – Limits Of Insurance; and

      **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A**, **B**, or medical expenses under Coverage **C**.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments — Coverages **A** and **B**.

   c. This insurance applies to "bodily injury" and "property damage" only if:

      **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      **(2)** The "bodily injury" or "property damage" occurs during the policy period; and

Ex. B. at CG 00 01 12 07.

\* \* \*

**SECTION IV DEFINITIONS**

   17. "Property damage" means:
   **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   **b.** Loss of use of tangible property that is not physically injury. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

**PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT—PAGE 8**
2756396v1
01238.255

\* \* \*

> 13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

Ex. B. at CG 00 01 12 07.

4.4     In addition, the Policies preclude coverage for "property damage" that occurred prior to the effective date of the Policies' coverage parts; is alleged to be in the process of occurring as of the effective date of the Policies' coverage part; or is in the process of settlement, adjustment or "suit."  The exclusion applies to all continuing injury or damage and provides:

\* \* \*

> **A.**    The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A - Bodily Injury and Property Damage:**
>
> This insurance does not apply to any "bodily injury" or "property damage" that:
>
> **1**.    first occurred prior to the Effective date of this Coverage Part;
>
> **2.**    is alleged to be in the process of occurring as of the Effective date of this Coverage Part; or
>
> **3.**    is in the process of settlement, adjustment or "suit".
>
> This exclusion applies to all continuing injury or damage:
>
> **1.**    arising from the same or similar cause, including continuous or repeated exposure to substantially the same general harmful conditions; or
>
> **2.**    at the same or adjacent location; or
>
> **3.**    from the same or similar work; or
>
> **4.**    from the same product or service.

\* \* \*

Ex. B. at CSGA 401 07 10.

4.5     The Policies also preclude payment for punitive or exemplary damages.  The exclusion provides:

* * *

**2.   Exclusions**

This insurance does not apply to:

Any claim of indemnification for punitive or exemplary damages. If a suit is brought against any insured for a claim covered by this Coverage Part, seeking both compensatory and punitive or exemplary damages, we will provide a defense to such action. However, we will not have an obligation to pay for any costs, interest, or damages attributable to punitive or exemplary damages. If state law provides for statutory multiple damage awards, we will pay only the amount of the award before the multiplier is added.

* * *

Ex. B. at CSGA 401 07 10.

<h2 align="center">V.<br>CLAIMS FOR DECLARATORY RELIEF</h2>

5.1   CSUIC seeks a declaration that it has no duty to defend or indemnify LML for the claims made by SCI in the Underlying Lawsuit because LML was the construction manager on Both Projects and all allegations and damages sought against LML are barred by the Construction Management Errors and Omissions and Contractors Professional Exclusion.

5.2   CSUIC also seeks a declaration that it has no duty to defend or indemnify SCI because all allegations and damages sought against LML are barred by the progressive and continuous loss exclusion.

5.3   CSUIC also seeks a declaration that it has no duty to defend or indemnify SCI because the 2013-2014 policy is not triggered because construction of Both Projects did not begin until after the policy expired.

5.4   CSUIC seeks a declaration that it has no obligation to pay for any costs, interest, or damages attributable to any punitive or exemplary damages SCI seeks against LML.

WHEREFORE, CSUIC seeks a declaration that The CSUIC Commercial Liability Policies No. 0047518 issued to LML, effective from May 23, 2013 to May 23, 2014; May 23,

2014 to May 23, 2015; May 23, 2015 to May 23, 2016; and May 23, 2016 to May 23, 2017, do not provide coverage for any and all claims made by SCI in the Underlying Lawsuit, and for such other and further relief to which CSUIC may show itself justly entitled.

        Respectfully submitted,

        THOMPSON, COE, COUSINS & IRONS, L.L.P.

        /s/ Harrison H. Yoss
        Harrison H. Yoss
        Attorney-In-Charge
        State Bar No. 22169030
        Plaza of the Americas
        700 North Pearl St., 25th Floor
        Dallas, Texas 75201
        Telephone:  (214) 871-8259
        Telecopier:  (214) 871-8209

        COUNSEL FOR PLAINTIFF
        CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY